RENDERED: NOVEMBER 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0410-MR

JERARD GARRETT                                                APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANNIE O'CONNELL, JUDGE
ACTION NOS. 13-CR-000246-001 & 13-CR-000744-001

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE: Jerard Garrett, *pro se*, appeals from the Jefferson Circuit Court's denial of his motion to alter, amend, or vacate judgment and sentence pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. Garrett contends that he received ineffective assistance of counsel during his trial and post-conviction proceedings. Upon careful review, we affirm.

# BACKGROUND

The charges against Garrett arose from two murders committed during separate drug transactions that occurred several days apart.

> In one indictment, a Jefferson County grand jury charged Garrett and his co-defendant, Billy Richardson, with one count each of murder, first-degree robbery, first-degree wanton endangerment, third-degree terroristic threatening, and being a first-degree persistent felony offender ("PFO1"), arising from the murder of Jamie Young on December 29, 2012. In a separate indictment, the grand jury charged Garrett and Richardson with one count each of murder and first-degree robbery, arising from the murder of Kenny Forbes on December 23, 2012. Over Garrett's objection, the trial court consolidated the charges in the two indictments for trial. Pursuant to RCr 6.18, the trial court found that the defendants' practice of scheduling meetings through a known intermediary to conduct a drug transaction, then robbing the victim, was sufficiently unique to warrant joinder of the charges and consolidation of the indictments.

*Garrett v. Commonwealth*, 534 S.W.3d 217, 220-21 (Ky. 2017), *as modified* (Dec. 20, 2017) (footnote omitted).

The jury convicted Garrett of two counts of murder, two counts of first-degree robbery, one count of first-degree wanton endangerment, one count of third-degree terroristic threatening and being a first-degree persistent felony offender (PFO). He entered into a sentencing agreement pursuant to which the Commonwealth agreed to dismiss the PFO charge and recommend a cumulative

sentence of life in prison without the possibility of parole for twenty-five years. The trial court sentenced Garrett in accordance with the terms of the agreement.

On direct appeal, Garrett argued that the ballistic examiner's testimony that the bullets found at both murder scenes were fired from the same weapon should not have been admitted; that the trial court abused its discretion by joining the Forbes and Young murder charges together in a single trial; that the trial court should not have allowed a witness, Jamie Quisenberry, to make an in-court identification of Garrett as the one who shot Young because Quisenberry had not been able to identify him in a photographic lineup five days after the shooting; that the trial court improperly allowed a police detective's testimony to bolster his own credibility; and that the Commonwealth's use of CourtNet information regarding a witness's address was improper. These alleged errors were all preserved for appeal by the objections of Garrett's trial counsel. The final judgment and sentence were affirmed on direct appeal. *See id*. at 228.

Garrett subsequently filed a RCr 11.42 motion, *pro se*. He alleged that he was denied counsel during arraignment; the Commonwealth failed to turn over two photo packs to his defense counsel; the Commonwealth failed to turn over exculpatory evidence; and his trial counsel was ineffective for failing to raise objections to the jury instructions, for failing to preserve the record for appeal, and for advising him to accept the sentencing agreement. An attorney from the

Department of Public Advocacy was subsequently appointed to represent Garrett. He filed a supplemental RCr 11.42 motion. In reliance on an unpublished opinion of the Superior Court of the District of Columbia, *United States v. Tibbs*, Case No. 2016-CF1-19431, 2019 WL 4359486 (D.C. Super. Ct. Sept. 5, 2019), he argued that the *Daubert*[1] hearing on the admissibility of the testimony of the ballistics expert was inadequate.

The trial court held an evidentiary hearing on the RCr 11.42 motion and heard testimony from Garrett and from his trial counsel.[2] Garrett's trial counsel testified at length about his theory of the case and his defense strategy. The trial court then entered an opinion and order denying the motion. This appeal by Garrett followed.

## STANDARD OF REVIEW

Garrett claims that he was denied effective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments. Claims of ineffective assistance of counsel are reviewed under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985).

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[2] Although the recording of the RCr 11.42 hearing was not designated to be made part of the record, it was in the record before this panel, and we were able to review it.

Under the *Strickland* framework, an appellant must first show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. A "deficient performance" contains errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the appellant must show that counsel's deficient performance prejudiced his defense at trial. *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* An appellant must satisfy both elements of the *Strickland* test in order to merit relief. *Id.*

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016).

In reviewing counsel's performance, we are required to presume that counsel's performance was reasonable. *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007). We review "the trial court's factual findings for clear error while reviewing the application of its legal standards and precedents *de novo*." *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021) (citing *Commonwealth v. Pridham*, 394 S.W.3d 867, 875 (Ky. 2012)).

## ANALYSIS

### 1. The trial court's findings were adequate

Garrett argues that the trial court failed to make adequate findings following the evidentiary hearing, as required by RCr 11.42(6), which provides as follows:

At the conclusion of the hearing or hearings, the court shall make findings determinative of the material issues of fact and enter a final order accordingly. If it appears

that the movant is entitled to relief, the court shall vacate the judgment and discharge, resentence, or grant him or her a new trial, or correct the sentence as may be appropriate. A final order shall not be reversed or remanded because of the failure of the court to make a finding of fact on an issue essential to the order unless such failure is brought to the attention of the court by a written request for a finding on that issue or by a motion pursuant to Civil Rule 52.02.

RCr 11.42(6).

Garrett contends that his post-conviction counsel was ineffective for failing to file a motion pursuant to Kentucky Rules of Civil Procedure (CR) 52.02 to request such findings.

This argument fails for several reasons. First, the trial court's opinion and order does contain adequate findings to support its decision to deny the motion. Second, Garrett does not specify what evidence was presented at the hearing that should have formed the basis for any additional findings. RCr 11.42(2) expressly requires the movant to "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds[,]" or face "a summary dismissal of the motion." RCr 11.42(2). Third, his claim that his post-conviction counsel was ineffective for failing to file a motion for additional findings pursuant to CR 52.02 is not sustainable because "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally

ineffective assistance of counsel in such proceedings." *Bowling v. Commonwealth*, 981 S.W.2d 545, 552 (Ky. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)).

**2. Trial counsel was not ineffective for failing to investigate witnesses and evidence**

Next, Garrett argues that his trial counsel was ineffective for failing to perform an adequate investigation, thus depriving him of a reasonable defense. In rejecting this argument, the trial court stated that Garrett had not provided details about what investigation was lacking nor about which witnesses could have testified on his behalf. The trial court concluded that his allegations were speculative and lacking in specific factual support. Garrett contends that his appointed post-conviction counsel was ineffective for failing to provide such factual support for these unidentified allegations and for failing to seek substantiation of the allegations at the evidentiary hearing. Garrett relies on Kentucky Revised Statute 31.110(2)(a), which states in relevant part that "[a] needy person who is entitled to be represented by an attorney under subsection (1) of this section is entitled: . . . [t]o be counseled and defended at all stages of the matter[.]" As previously stated, no right to effective post-conviction counsel has been recognized in Kentucky. In any event, Garrett's post-conviction counsel would have had to rely on Garrett to inform him about the specific evidence his trial counsel should have investigated. "RCr 11.42 motions are not intended to

-7-

conduct further discovery or fishing expeditions.  It is well-settled, 'vague allegations, including those of failure to investigate, do not warrant an evidentiary hearing and warrant summary dismissal of the RCr 11.42 motion.'" *Prescott v. Commonwealth*, 572 S.W.3d 913, 926 (Ky. App. 2019) (citation omitted). Garrett's claim lacks specificity and does not overcome the strong presumption that his counsel's performance was reasonable.  *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

## 3. Trial counsel was not ineffective in his handling of witnesses and the introduction of photo packs

Garrett's next argument relates to the testimony of trial witness Jamie Quisenberry, an eyewitness to one of the shootings.  Garrett's trial counsel objected to Quisenberry making an in-court identification of Garrett as the shooter, on the grounds that Quisenberry had failed to identify Garrett in a photographic line up five days after the shooting.  The trial court overturned the objection.  On direct appeal, the Kentucky Supreme Court affirmed the trial court's decision, stating as follows:

> Garrett's argument is not well taken.  After appellate briefs were submitted in this case, this Court issued an Opinion in *Fairley v. Commonwealth*, 527 S.W.3d 792 (Ky. 2017), rejecting the very claim Garrett now presents.  In *Fairley*, we held that the witness's inability to identify the defendant in a photographic lineup did not bar him from making an in-court identification:

> [T]he proper course is to permit the
> witness to attempt to identify the suspect in
> court and, if an identification is made, allow
> the defense to thoroughly cross-examine the
> witness concerning his failure to make a
> prior identification.  The jury is fully
> capable of determining what weight to
> assign to the in-court identification . . . .
> Accordingly the trial court did not abuse its
> discretion in permitting the introduction of
> this evidence.

*Id.* at 797.

In *Fairley*, we also rejected the defendant's
assertion that the witness's in-court identification should
have been analyzed by the trial court under the factors set
forth in *Biggers*[3] before allowing the witness to testify.
*Id.* at 798.  "In *Biggers*, the Supreme Court set forth a
two-prong due process test for considering an
identification by a witness following impermissible
suggestive pretrial procedures such as a photo array or
line-up." *Id.* at 797-98.  We expressly declined to extend
*Biggers* to in-court identifications when no unduly
suggestive pretrial behavior has been alleged; "'a primary
aim of the *Biggers* line of cases was deterrence of law
enforcement's use of improper lineups, showups, and
photo arrays, a factor clearly not present in the case
before us.'"  *Id.* at 799 (citation omitted).

Garrett has not suggested that the photographic
lineup presented to Quisenberry was unduly suggestive,
or alleged any other improper pretrial procedures; rather,
Garrett argues that the in-court identification by a witness
who did not make an identification previously is unduly
suggestive.  This reasoning does not trigger application
of *Biggers*, and is unsupported by Kentucky case law.
The trial court followed the proper course of action by

---

[3] *Neil v. Biggers*, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

> allowing Quisenberry to make an in-court identification,
> allowing Garrett the opportunity to cross-examine him,
> and letting the jury assess Quisenberry's credibility and
> weigh the evidence presented.

*Garrett*, 534 S.W.3d at 224-25.

In its order and opinion denying the RCr 11.42 motion, the trial court correctly ruled that this claim had been decided because the Kentucky Supreme Court held that the trial court properly permitted Quisenberry to make the in-court identification of Garrett. Garrett argues that the trial court erred because "a failure to prevail on a palpable error claim [on direct appeal] does not obviate a proper ineffective assistance claim." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006), *as modified* (May 23, 2006). But the Kentucky Supreme Court did not engage in palpable error review because Garrett's trial counsel objected to Quisenberry's in-court identification and thus properly preserved the error for appellate review.

Garrett also raises an argument regarding another eyewitness, Charles Young. Garrett claims that his attorney was ineffective for failing to file a motion to compel the introduction of some additional photo packs at trial. Apparently, the additional photo packs could have been used to impeach Young's identification of Garrett as the shooter. Garrett's previous attorney had filed a motion to suppress both Young and Quisenberry's identification of Garrett. A hearing was held on the motion to suppress, and it was denied. At the RCr 11.42 hearing, Garrett's trial

-10-

counsel testified that he knew of the existence of other photo packs from his review of the suppression hearing. Rather than filing a motion to compel the Commonwealth to produce them at trial, he decided it would be a more effective trial strategy to "spring it" on the investigating police officer in order to impeach his testimony. He explained that on cross-examination, the officer several times was forced to testify that he had no explanation for the other photo packs. "To show ineffective assistance of counsel, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. A defense attorney must enjoy great discretion in trying a case, especially with regard to trial strategy and tactics." *Vincent v. Commonwealth*, 584 S.W.3d 762, 770 (Ky. App. 2019) (internal quotation marks and citations omitted). Garrett has not offered any basis for overcoming the presumption that his trial counsel's decision was sound trial strategy.

**4. Trial counsel was not ineffective for failing to subpoena a defense witness**

According to Garrett, an individual named Michael McCain or McClain should have been subpoenaed as a defense witness. Garrett claims he could have testified that one of the victims was carrying a bag which did not contain drugs but a handgun. In his RCr 11.42 memorandum, he alleged that this was a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Garrett claims his trial counsel was ineffective for failing to

investigate and subpoena McCain.  This argument is clearly refuted by the record, which shows that trial counsel moved to compel discovery, specifically requesting information about an individual named "LaMichael McClain" and also tendered an order to the trial court requiring the police to disclose evidence relating to individuals allegedly involved in the shootings, including "LaMichael McClain." We agree with the trial court's conclusion that this claim is purely speculative and does not warrant relief under RCr 11.42.

**5. Trial counsel was not ineffective for failing to object on the grounds that the jury instructions were flawed and resulted in a lack of unanimous verdict**

Garrett argues that his counsel was ineffective for failing to object to the jury instructions which he claims deprived him of a unanimous verdict.

The jury was asked to find Garrett guilty of robbery if he acted alone or in complicity with Richardson to steal or attempt to steal money and/or marijuana from the victim Kenny Forbes and in doing so, acting alone or in complicity with Richardson, he caused physical injury to Forbes.  A similar instruction asked the jury to find Garrett guilty of murder if he acted alone or in complicity with Richardson to kill Kenny Forbes by shooting him with a gun and in doing so, acting alone or in complicity with Richardson, he intentionally caused Kenny Forbes's death.  The jury instructions for Garrett's codefendant, Billy Richardson, followed the same pattern, with the jury being asked to determine whether Richardson acted alone or in complicity with Garrett to commit robbery

and/or murder. The jury found Garrett guilty of both the murder and robbery of Kenny Forbes and found Richardson not guilty of either charge.

Garrett argues that his trial counsel should have objected after the return of these verdicts on the grounds that the jury's finding of guilt was not unanimous. He contends that because the jury found Richardson not guilty of the murder or robbery of Forbes, the alternative theory of "in complicity" found in Garrett's instructions means the verdict was not unanimous.

The Kentucky Supreme Court has identified three different types of unanimous verdict violations. "The first type . . . occurs when multiple counts of the same offense are adjudicated in a single trial." *Cox v. Commonwealth*, 553 S.W.3d 808, 812 (Ky. 2018) (citation omitted). The second type "occurs when a jury instruction may be satisfied by multiple criminal acts by the defendant." *Id*. More specifically, this requirement "is violated when 'a general jury verdict [is] based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof.'" *Id*. The third type stems from a "combination jury instruction." "A 'combination' instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory." *Id*.

Garrett seems to be alleging the third type of violation but does not meet it because there was evidence to support a conviction under either theory, that is, that Richardson or Garrett was either acting alone or in complicity with the other. For example, if the jury had found both men acted alone in committing the murder and robbery of one victim, unanimity would have been implicated because the verdicts would have been contradictory. By finding that Richardson was not guilty of acting alone or in complicity with Garrett, however, the jury clearly found that Garrett acted alone, not in complicity with Richardson. There was nothing contradictory or inconsistent in the jury's verdicts and nothing to indicate a lack of unanimity. Consequently, trial counsel was not ineffective for not objecting to the verdicts on the grounds of lack of unanimity.

Garrett further argues that there was a constructive amendment between his indictment for the murder of Jamie Young and the jury instructions on this offense with the result that the final verdict lacked unanimity. His argument in this regard is somewhat confusing. The indictment charged Garrett and Richardson with acting alone or in complicity with each other to murder Jamie Young. Richardson's second-degree manslaughter instruction required the jury to find that Garrett killed Jamie Young and that prior to the killing Richardson had acted in complicity with Garrett to rob and/or engage in a drug transaction with Jamie Young and that in doing so, Richardson was aware of and consciously

disregarded a substantial and justifiable risk that Jamie Young would be killed.

Richardson was found guilty under this instruction. Garrett indicates that the

jury's finding means that there was no complicity relating to the killing of Jamie

Young, only that Garrett alone killed him. He seems to argue that this removed the

alternative theory of "in complicity" and the verdict could not be unanimous under

both theories. The instructions required the jury to determine the level of

culpability between Richardson and Garrett and the jury did so. The jury

determined that Garrett acted alone in killing Young, and that Richardson prior to

the killing had acted in complicity with Garrett to rob and/or engage in a drug

transaction with Young. We fail to see how the verdict was not unanimous. If the

jury had found that Garrett acted in complicity with Richardson to commit murder,

then Richardson would also have been convicted of murder under that instruction

and the jury would not have proceeded to the second-degree manslaughter

instruction.

The verdicts did not lack unanimity and consequently Garrett's trial

counsel was not ineffective for not raising an objection.

**6. Trial counsel was not ineffective for failing to object to alleged prosecutorial misconduct**

The lead detective in the Forbes murder investigation secured

surveillance video of a liquor store parking lot located near the scene of the

murder. The video showed an individual who appeared to be Forbes entering a

black sedan in a gas station parking lot across the street. Shortly thereafter, a red truck left the parking lot. The video does not show either a robbery or a murder. The prosecutor took the video home and enlarged it to make it easier to view as a PowerPoint. Garrett contends that his counsel should have objected to this modified video being shown to the jury. At the RCr 11.42 hearing, trial counsel testified that he did object to the enlarged footage and explained the prosecutor made no alterations to the video except to enlarge it. Garrett argues that by enlarging the video, the Commonwealth was able to present a false impression of what the video was really showing. But he does not explain what this false impression was.

Garrett also argues that his trial counsel should have objected to testimony by Detective Guffy about a series of phone calls the victim Forbes made before his death. Garrett argues that the testimony regarding the phone records was not adequately authenticated. He presents a summary of Guffy's testimony but does not provide a reference to where it is located in the record. He contends that the testimony presented a false impression of the facts premised solely upon inferences, but he does not elaborate on this contention any further. Garrett has simply not demonstrated or explained how his attorney's alleged failure to object to the allegedly inadequate foundation for the testimony constituted deficient performance, much less how it deprived him of a fair trial.

## CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's opinion and order denying Garrett's RCr 11.42 motion.


ALL CONCUR.


BRIEF FOR APPELLANT:

Jerard Garrett, *pro se*
Eddyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky