RENDERED:  FEBRUARY 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0501-MR


ROBERT BRANDON SCHIERER                                        APPELLANT


|   | APPEAL FROM KENTON CIRCUIT COURT |
|---|---|
| v. | HONORABLE PATRICIA M. SUMME, JUDGE |
|   | ACTION NO. 14-CR-00042 |


COMMONWEALTH OF KENTUCKY                                        APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, EASTON, AND TAYLOR, JUDGES.

EASTON, JUDGE:  This is the second appeal of the denial of Appellant Robert

Schierer's Motion to Vacate, Set Aside, or Correct Judgment pursuant to RCr[1]

11.42.  This motion followed Schierer's conviction by guilty plea to a charge of

murder for wantonly causing the death of an infant child.  Following an evidentiary

---

[1] Kentucky Rules of Criminal Procedure.

hearing as directed by the Kentucky Supreme Court on remand of the first appeal, the Kenton Circuit Court again denied the motion. Finding no abuse of discretion in the circuit court's decision, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2013, Schierer was home alone with his girlfriend's infant child. Schierer said he realized at some point that the child was not breathing. He called 911 and attempted CPR. The child later died at a hospital as a result of massive, traumatic head injury.

In January 2014, Schierer was indicted by a Kenton County Grand Jury for the offense of murder. KRS[2] 507.020. In March 2015, he entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).[3] The trial court accepted the terms of the plea and sentenced Schierer to 30 years' incarceration.

In March 2018, Schierer filed a *pro se* RCr 11.42 motion, raising multiple claims for relief, including: ineffective assistance of counsel for failure to conduct an adequate pretrial investigation about a supposed third-party admission of guilt to the crime; ineffective assistance of counsel for wrongfully advising him on parole eligibility; ineffective assistance of counsel for failure to file a motion to

---

[2] Kentucky Revised Statutes.

[3] An "*Alford* plea" permits a defendant to maintain his innocence for some purposes yet agree to conviction for a crime and imposition of penalty.

-2-

suppress autopsy photos; and ineffective assistance of counsel for permitting Schierer to enter a plea while still claiming innocence. Schierer requested appointment of counsel and an evidentiary hearing. Entering a detailed order of its reasoning,[4] the trial court denied the motion without a hearing.

On his first appeal, Schierer challenged the trial court's denial on three grounds: for directing trial counsel to submit an affidavit and utilizing that affidavit to deny relief without a hearing; in ruling that there is no basis for permitting discovery in post-conviction proceedings; and in rejecting his contention that trial counsel was ineffective by misinforming him of his plea's parole-eligibility consequences. This Court affirmed the trial court decision.[5]

Appellant then moved for discretionary review with the Kentucky Supreme Court, which granted his motion, vacated this Court's Opinion, and remanded the case to the trial court for an evidentiary hearing.[6] In its one-paragraph Order, the Kentucky Supreme Court did not specify what claims were to be subjected to an evidentiary hearing. Although the Kentucky Supreme Court Order was entered in September 2021, the trial court did not conduct the

---

[4] Trial Record (TR), 1st Appeal, Vol. II, p. 188-95.

[5] *Schierer v. Commonwealth*, No. 2019-CA-0477-MR, 2021 WL 1931893, at *1 (Ky. App. May 14, 2021).

[6] *Schierer v. Commonwealth*, No. 2021-SC-0217-D (Ky. Sep. 22, 2021).

evidentiary hearing until February 2025. The fault for this inexcusable delay is not clear.

At the evidentiary hearing, each side was given the opportunity to present evidence on all claims. The circuit court heard testimony from trial counsel, Hon. Dean Pisacano, and Schierer. The circuit court again denied the motion in a thorough written Order.[7] This second appeal follows.

## STANDARD OF REVIEW

To prove ineffective assistance of counsel where a guilty plea has been entered, the movant must establish:

> (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Commonwealth v. Elza*, 284 S.W.3d 118, 120-21 (Ky. 2009) (citations omitted). "[T]he trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001).

---

[7] TR, 2nd Appeal, p. 236-44.

"Denial of RCr 11.42 relief is reviewed for abuse of discretion."

*Prescott v. Commonwealth*, 572 S.W.3d 913, 920 (Ky. App. 2019) (citing *Phon v.*

*Commonwealth*, 545 S.W.3d 284, 290 (Ky. 2018)). "The test is 'whether the trial

judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.

1999)). Legal issues are reviewed *de novo*. *Id.* (citing *Phon*, 545 S.W.3d at 290).

## ANALYSIS

Schierer makes some of the same challenges here as he did in his first

appeal. The primary complaint is about an alleged failure to conduct an adequate

pre-trial investigation into a reported third-party admission of guilt. Intertwined

with this claim of an alternate perpetrator of the crime, Schierer attempts to raise a

new argument for the first time in this appeal: he claims ineffective assistance of

counsel for failure to develop a reasonable doubt defense theory based on the

alleged third-party admission of guilt. Overall, Schierer insists his counsel should

not have advised him to enter a guilty plea when he maintained his innocence.

### SCHIERER DID NOT RECEIVE INEFFECTIVE ASSISTANCE
### OF COUNSEL FOR FAILURE TO FURTHER INVESTIGATE

Generally, to establish an ineffective-assistance-of-counsel claim, the

movant must prove two elements under *Strickland v. Washington*, 466 U.S. 668,

687 (1984). "First, the defendant must show that counsel's performance was

deficient. This requires showing that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

As we have indicated, the formulation is somewhat different when a guilty plea is involved. Prejudice is shown in the context of a guilty plea by assessment of whether the established serious errors of counsel would have reasonably changed the mind of the defendant about entering the guilty plea. But real prejudice to the case still must be shown.

Schierer argues he was denied effective assistance of counsel when trial counsel failed to adequately investigate a lead that mother's ex-boyfriend, Zachary Timmerman (Timmerman), had admitted to causing the death of the infant child while Schierer was asleep. The trial court rejected this argument, finding the evidence defeats this assertion. We agree.

Trial counsel Pisacano testified at the evidentiary hearing that he and his co-counsel spent extensive time with Schierer trying to figure out how the baby died and if there was something "to hang our hat on to help him out." Schierer

-6-

never told trial counsel or the police that Timmerman or anyone else was ever in the apartment or could have harmed the child. Only after Timmerman was incarcerated on other charges did Schierer claim Timmerman told the mother in a phone call from the jail that he had caused the infant's injuries.

Once this information was related to trial counsel, he followed up immediately. Trial counsel ordered copies of all phone calls between Timmerman and mother. These recordings revealed no references or inferences that suggested Timmerman was responsible for the child's injuries. Trial counsel also spoke with mother directly. Trial counsel indicated during a May 2018 status conference that mother denied Timmerman ever made such a statement to her.[8] According to trial counsel's testimony at the evidentiary hearing in February 2025, mother "didn't exactly recant but wasn't helpful" in obtaining evidence to support the statement.

Schierer argues that trial counsel should have interviewed Timmerman and should have ordered copies of all calls to the mother from anyone at the jail because Timmerman's admission of guilt could have occurred on another inmate's phone account. Schierer's arguments have been thoroughly reviewed by both the trial court and by this Court in Schierer's first appeal and now on remand

---

[8] Video Record (VR), May 14, 2018, at 11:20:00-11:40:00.

and this second appeal. Schierer has presented nothing new here. There is no evidence in the record of an actual confession by Timmerman.[9]

We take this opportunity to remind RCr 11.42 movants that it is not enough to just keep saying there is something out there somewhere my attorney should have found. When you get to the evidentiary hearing, it is time to make your case. For example, a movant must *present evidence* of what the attorney should have found. Without this, no prejudice can be shown.

Everyone here had years to find such evidence, if it existed in this case. It takes no time to locate Timmerman, for example. He was on supervised probation[10] from the same circuit court when the evidentiary hearing took place in 2025. If the child's mother can write a letter to the Court at the time of the evidentiary hearing, there is no explanation as to why she could not have been called, even as a hostile witness, to be questioned about this supposed confession by Timmerman (unless of course she did not want to commit perjury for her current boyfriend). If there is some recording about the confession in the

---

[9] Although there are allegations of "voice recordings" of violent threats by Timmerman against mother alleged in both mother's letter to the trial court dated February 27, 2025, TR, 2nd Appeal, p. 227, and Appellant's Brief at 12-13, no such recordings have ever been made part of the record in this case. There was a post-conviction exchange of discovery material from trial counsel to Schierer through the trial court on October 30, 2017, VR at 11:10:10. Only copies of the several DVD labels are included in the record by Order entered November 7, 2017. Contents of these DVDs are unknown. TR, 1st Appeal, p. 122-132. Yet Schierer has pointed to nothing to establish any confession by another.

[10] Kenton Circuit Court, Case No. 23-CR-01028.

possession of the police, that would have been revealed through a subpoena and could have been played into evidence at the evidentiary hearing. Lest Schierer wants to start blaming his assigned RCr 11.42 counsel, we can safely say that the circumstances of this case as fully revealed by the existing record show that there is nothing to present about someone else committing this crime.

For example, not only is there no testimony from Timmerman or the mother, but there is also no offered witness to show Timmerman's presence at the apartment during the time frame the child suffered injuries. The investigation revealed no sign of forced entry into the apartment on the day of the child's death. While Schierer claims he and the mother did not yet have keys for the apartment, this did not prevent Schierer from locking things up while he and the baby were inside, which is exactly how the police found the situation upon their arrival. No one had broken in while Schierer claimed he slept.

A less-than-complete investigation may be justified by a reasoned and deliberate determination that further investigation is not warranted. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91. And to be sure, a reasonable investigation need not be "an investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources, but also with the benefit of hindsight,

would conduct," but rather "must be reasonable under all the circumstances." *Haight v. Commonwealth*, 41 S.W.3d 436, 446 (Ky. 2001), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

In *Bowling v. Commonwealth*, 981 S.W.2d 545 (Ky. 1998), the Kentucky Supreme Court rejected several claims of ineffective assistance of counsel, including that trial counsel was ineffective for failing to investigate several other people who allegedly had a motive to commit the charged murders. The Court held that the alleged failure to investigate did not constitute ineffective assistance because the argument was based only on "vague rumors and unsupported claims[,]" *id.* at 550, and, in any event, "the mere existence of other potential suspects could do nothing to diminish the impact of the Commonwealth's overwhelming proof against Appellant." *Id.*

The circuit court here determined that trial counsel did in fact follow up on the Timmerman lead with a proper investigation. In the end, this was simply not a plausible defense. Any further investigation was unwarranted, particularly in light of the medical evidence and Schierer's own statements upon which we will comment. As in *Bowling*, *supra*, we must look at the evidence of Schierer's guilt in assessing prejudice by anything counsel supposedly failed to do.

The medical evidence here was overwhelming proof against Schierer, especially when considering what else Schierer said. The infant sustained a skull

fracture so severe that the child could not have survived more than a few hours from the infliction of the trauma due to the swelling to the brain, multiple subdural bleeds, and retinal hemorrhaging. And the medical evidence showed the child's injuries were sustained in the time frame that the infant was in Schierer's exclusive care and custody. The medical examiner ruled out accidental causes due to the severity of the damage.

Schierer's own statements also contradicted the claim that someone else was responsible for the child's injuries. Schierer states on the 911 recording that the eight-week-old baby "head-butted him." At the plea hearing in March 2015, Schierer acknowledges that the child's trauma must have been caused by him, but he did not have the intention of killing the baby and could not believe that his actions were traumatic enough to have caused death. Yet, because of the time frame and no one else being around, Schierer reluctantly concluded that *his* actions did in fact cause the fatal trauma to the child.

The trial court also conducted a thorough plea colloquy wherein Schierer answered "yes" to all the following questions:

> -You reviewed the indictment and told your attorneys all the facts known to you about these charges?
>
> -And they are fully factually informed by you about your case, including all of your witnesses?
>
> -They investigated and are flatly informed about your case?

-You've discussed all of your defenses with them?

-You discussed potential trial strategies with them, which may have included witness availability, witness believability, and why counsel may or may not call those witnesses at trial?

-You waive the right to confront and cross examine all the persons called to testify against you to prove your guilt?

-You waive the right to produce evidence including persons to testify about your innocence or in your defense?

-You were alone with the child the entire time, correct?[11]

Likewise, trial counsel affirmatively responded at the plea colloquy that all defenses and trial strategies were discussed with Schierer. Trial counsel specifically stated it was indisputable the child died from trauma while Schierer was the caretaker, and the medical evidence showed the trauma had to have occurred during the time frame the child was in Schierer's sole care. Trial counsel further testified that defendant never provided an alternate explanation for the child's injuries. At the sentencing hearing in May 2015, the circuit court explained that one of Schierer's alternating assertions, that the baby fell off a table, would not have been the kind of force to cause the injuries suffered in this case.

---

[11] TR, 2nd Appeal, p. 238-39.

The trial court determined that, taken as a whole, the evidence refuted Schierer's assertion that his counsel was ineffective for failing to conduct further investigation into the possibility that Timmerman caused the child's death. This determination is reasonable, fair, and supported by sound legal principles. Trial counsel did in fact adequately investigate the unsupported Timmerman claims, and, considering the overwhelming medical evidence and statements made by Schierer himself, it was a reasonable determination that further investigation was unwarranted. Trial counsel's performance was not deficient. Whatever may be said about investigation, Schierer has failed to show prejudice by establishing any evidentiary basis for his claims. The circuit court correctly concluded that Schierer would not have rejected the plea agreement.

## SCHIERER WAS NOT FORCED TO TAKE A PLEA AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL

Schierer essentially argues that he was forced by his attorneys to take a plea even though he maintained his innocence. Mainly, Schierer believes that a complete investigation would have given trial counsel every reason to pursue a jury trial, and every reason for trial counsel to encourage Schierer to not accept a plea offer.

As already discussed, trial counsel did in fact adequately investigate the case. In addition, Schierer was unable to provide trial counsel with facts that

-13-

would assist in forming any defense theory, and Schierer himself admitted to the court that he caused the physical trauma to the infant.

In the context of voluntariness of the guilty plea, the circuit court noted in its decision following the evidentiary hearing that Schierer entered his plea pursuant to *Alford*, which provides:

> When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.[12]

(Citations omitted.)

Here, Schierer stated at the plea hearing he had a concern as to never having an intent to cause the death of the child. Schierer indicated in his Pre-Sentence Investigation Report that he "was just pleading that way to avoid spending a possible life in prison."[13] But Schierer agreed at the plea hearing that

---

[12] *Alford*, 400 U.S. at 37.

[13] VR, Sentencing hearing, May 12, 2015, at 03:38:48.

his wanton behavior did in fact cause the trauma which resulted in death, and this admission is sufficient to support a finding of guilt.[14]

Schierer was facing a life sentence if convicted of murder at trial. By entering an *Alford* plea, Schierer was able to take a reduced sentence while still maintaining his innocence in a case with significant evidence of guilt. Again, Schierer has failed to demonstrate that his plea was based on errors of counsel sufficient to support a claim of ineffective assistance of counsel. He has shown no actual prejudice, and his plea was voluntary.

**SCHIERER FAILED TO PRESERVE THE CLAIM FOR INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO DEVELOP A REASONABLE DOUBT THEORY**

Schierer argues for the first time in this appeal that "trial counsel's failure to fully investigate claims provided by [mother] led to one outcome for the defense; plead guilty. Had trial counsel reviewed the complete discovery file, a reasonable doubt theory could have been developed for the jury to decide."[15] For reasons already discussed, claims based on trial counsel's investigation are without merit. More concerning is the fact that Schierer never argued this permutation from his complaints during the several years his motion and these appeals have been pending.

---

[14] TR, 2nd Appeal, p. 243.

[15] *See* Appellant's Brief, p. 14.

This claim cannot be found in the initial *pro se* RCr 11.42 motion filed on March 21, 2018[16] or in Schierer's *pro se* memorandum of law in support of that motion.[17] This claim is not included in Schierer's first Brief filed on October 9, 2019, or in his Reply Brief filed on April 28, 2020. Schierer also failed to present this issue to the trial court at the evidentiary hearing held February 27, 2025.

"Kentucky precedent has unwaveringly held for decades that a party cannot raise new issues on appeal." *Parker v. Commonwealth*, 641 S.W.3d 197, 200 (Ky. App. 2022) (citing *Combs v. Knott County Fiscal Court*, 141 S.W.2d 859, 860 (Ky. 1940)). This Court, in response to arguments not properly raised, has previously declined to address such arguments altogether. *See, e.g.*, *Koteras v. Commonwealth*, 589 S.W.3d 534, 540-41 (Ky. App. 2018). "For this Court to have authority to review a claim, the trial court must have had an opportunity to correct its alleged error." *Id.* at 540 (citing *Harrison v. Leach*, 323 S.W.3d 702, 708-09 (Ky. 2010)). As this Court has stated on numerous occasions, "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Elery v. Commonwealth*, 368 S.W.3d 78, 97 (Ky. 2012) (citations omitted).

---

[16] TR, 1st Appeal, Vol. 1, p. 135-37.

[17] TR, 1st Appeal, Vol. 1, p. 138-53.

Considering Schierer's failure to raise this issue in his earlier appeal or before the trial court during the RCr 11.42 proceedings at issue in this case, the claim is unpreserved. Even if we consider the argument as just a restatement of Schierer's general argument about his plea, it has no merit for the same reasons we have already discussed.

We rejected the claim about misinformation regarding parole eligibility in the first appeal. Instead of a life sentence or a term of more years, Schierer agreed to thirty years. With 85% parole eligibility, he would have to serve at least twenty years. The fact that, if he might have received the minimum twenty-year sentence, Scherer's eligibility would have made release *possible* at seventeen years is insufficient to establish any kind of prejudice in this case. Schierer received a sentence of much fewer years than he might have if the case had gone to trial. Schierer presented nothing new to demand a reevaluation of the prejudice component of his parole eligibility argument. *See Stiger v. Commonwealth*, 381 S.W.3d 230 (Ky. 2012).

We decline to address or readdress at any length other permutations of Schierer's various arguments. For example, we need not review the complaint about autopsy photos. There was no trial at which such photos could have been prejudicial. Schierer claims government suppression of evidence and the duty of the prosecution to disclose exculpatory evidence. But Schierer has not proven any

-17-

such claims, as the trial court noted. Any other contentions not addressed either were not timely raised and thus are waived or have no merit.

## CONCLUSION

The trial court did not abuse its discretion in determining that Schierer failed to meet his burden of proof that he received ineffective assistance of counsel in this case. The trial counsel did not commit such serious errors by action or inaction to satisfy the first prong of an ineffective counsel claim. Schierer also failed to prove prejudice from anything his counsel did incorrectly or failed to do. The Kenton Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert B. Schierer, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph Crawford White
Assistant Solicitor General
Frankfort, Kentucky